UNITED STATES of America,

v.

Jose TORIBIO–LUGO Defendant.

No. CRIM. 01–392(HL).

United States District Court,
D. Puerto Rico.

Sept. 24, 2001.

Joannie Plaza–Martinez, Federal Public Defender's Office, San Juan, for Jose Toribio–Lugo (1), defendants.

Irene C. Feldman, U.S. Attorney's Office, Criminal Division, San Juan, for U.S. Attorneys.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is the Government's motion to schedule a new trial in the above captioned case. The Government's request comes after the Court, *sua sponte*, declared a mistrial on the fourth day of a jury trial due to a lack of a twelve-member jury. Defendant Jose Toribio–Lugo argues that jeopardy has attached, and in light of the circumstances surrounding the declaration of mistrial, the Double Jeopardy Clause of the Fifth Amendment of the Constitution bars his retrial. For the reasons outlined below, the Defendant's motion contesting his retrial is hereby denied.

*FACTS:*

On August 13, 2001, twelve jurors and one alternate were selected to serve as the jury in Defendant's criminal trial. Due to some confusion during the jury selection process, juror number nine, Ana Iris Cruz, was mistakenly not permitted to join the other jurors in the jury box. At which point, the trial commenced with twelve jurors (the eleven chosen plus the alternate) rather than thirteen. No one—not the Court, court personnel, or the attorneysnoticed that a juror was missing. On the second day of trial, the alternate juror asked the Court to be excused for personal reasons.[1] Neither party objected, and the court believing that twelve jurors would remain, unwittingly excused the alternate juror.[2] Henceforth, Defendant's trial continued with only eleven jurors. Again, no one, including the Court, realized that only eleven jurors remained sitting.

On the August 20, 2001, the fourth day of trial, the Courtroom Deputy for the first time pointed out to the Court that one juror was missing. Unable to explain this defect, the Court asked both parties to consent to proceeding with only eleven jurors.[3] The Government agreed.[4] Defendant, however, did not.[5] At this point, the Court considered continuing the trial until the juror was found. This option was quickly discarded when the Court determined that the juror had been missing at least the last two days of trial, and that the case had proceeded with only eleven jurors after the dismissal of the alternate.[6] Seeing no viable option remaining for curing the defect, the Court declared a mistrial.[7] Neither party objected.

After declaring the mistrial, the Court with attorneys present, questioned the courtroom deputy in an attempt to ascertain exactly what had happened to the juror.[8] The Court concluded that the case had begun with an eleven-member panel plus the alternate, and after the dismissal of the alternate, only eleven jurors remained.[9] The Government moved to set a new trial date. The Court having concerns as to whether jeopardy had attached,

1. Tr. Proc. Aug. 14, 200, 1 p. 2.

2. Tr. Proc., Aug. 14, 2001, p. 2.

3. Tr. Proc., Aug. 20, 2001, p. 9–10.

4. Tr. Proc., Aug. 20, 2001, p. 10.

5. Tr. Proc., Aug. 20, 2001, p. 10.

6. Tr. Proc., Aug. 20, 2001, p. 10–11.

7. Tr. Proc., Aug. 20, 2001, p. 11.

8. Tr. Proc., Aug. 20, 2001, p. 12–13.

9. Tr. Proc. Aug., 20, 2001, p. 13.

hesitated to do so.[10] The Court requested briefs on whether Double Jeopardy barred retrial, and then proceeded to dismiss the jury.[11]

### I. Manifest Necessity:

█ The Double Jeopardy Clause allows retrial following a mistrial when taking all the circumstances into consideration, there is a "manifest necessity" for the mistrial, "or the ends of public justice would otherwise be defeated" by not granting a retrial. *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824); *United States v. Ramirez,* 884 F.2d 1524 (1st Cir.1989). Where a court declares mistrial *sua sponte,* retrial is usually barred absent "manifest necessity." *U.S. v. Dinitz,* 424 U.S. 600, 611–12, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). While the Supreme Court has declined to articulate a precise definition for what constitutes "manifest necessity," the First Circuit has interpreted this standard to allow retrial in cases where the jury is deadlocked, biased, or unduly influenced. *U.S. v. Barbioni,* 62 F.3d 5, 7 (1st Cir.1995) (finding manifest necessity when mistrial due to hung jury); *Reinstein v. Superior Court,* 661 F.2d 255, 257–59 (1st Cir.1981) (finding manifest necessity when some jurors exposed to an advertisement published by defendant's family and friends containing "highly inflammatory" inadmissible information).

█ Manifest necessity, however, is not a mechanical standard, but rather one that is flexible calling for "an analysis of each case upon its particular facts." *U.S. v. Gantley,* 172 F.3d 422, 429 (6th Cir. 1999); *Arizona v. Washington,* 434 U.S. 497, 505–06, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In deciding whether "manifest necessity" exists to declare a mistrial, a court need not find absolute necessity, but only a high degree of necessity. *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir. 1991). Moreover, a trial court is not constitutionally mandated to make an explicit finding of "manifest necessity," nor must it establish on the record the full extent of its basis for declaring a mistrial. *Washington,* 434 U.S. at 516–517, 98 S.Ct. 824. The court must, however, consider alternatives to declaring a mistrial. *U.S. v. Jorn,* 400 U.S. 470, 486–87, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion) (abuse of discretion because judge declared mistrial *sua sponte* in order to allow witness to seek counsel on right not to testify without considering the possibility of continuance or giving counsel time to object); *Brady v. Samaha,* 667 F.2d 224, 229–30 (1st Cir.1981) (abuse of discretion because judge hastily declared mistrial without considering alternatives or consulting with counsel).

█ In this case, the Court was left with no other viable option but to declare a mistrial in light of the fact that there were only eleven jurors hearing the case. Federal Rule of Criminal Procedure 23(b) requires a twelve-member jury in a federal criminal trial. This requirement was not met in this case. This defect, however unintentional, could have only been cured if both parties had consented to continuing with less than a twelve-member jury. FED. R. CRIM. P. 23(b) (stating that the parties are permitted to stipulate to a waiver of the twelve-member jury requirement at any time before verdict, provided that the agreement is in writing and approved by the court). The Defendant would not so consent leaving the Court with no other option but to declare a mistrial.

---

**10.** Tr. Proc., Aug. 20, 2001, p. 13.

**11.** Tr. Proc., Aug. 20, 2001, p. 13–15.

The Defendant, however, suggests that there was no manifest necessity to declare a mistrial because the Court did not explore any other alternatives. This argument lacks merit since the Court did indeed explore the only alternative available to it, namely requesting the parties' consent to continue with an eleven member panel. Defendant chose to withhold his consent and is now claiming that there was no manifest necessity to declare a mistrial. Defendant cannot have it both ways. There was nothing left for the Court to consider. There were no other alternate jurors to fill the requirement, and to fill the twelfth jury spot on the fourth day of trial with a new juror who by that point had missed several days of testimony was simply not an option. Therefore, absent the Defendant's consent, the Court had a manifest necessity to declare a mistrial *sua sponte*, and as such, the Double Jeopardy Clause does not bar a retrial.

## II. Defendant's Consent:

■ Assuming, *arguendo*, that no manifest necessity existed, the Double Jeopardy Clause rarely bars retrial when the defendant requests the mistrial or the defendant's conduct triggers the mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 674, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (retrial not barred after defendant requested mistrial unless government attempted to goad defendant into requesting the mistrial); *U.S. v. Larouche*, 866 F.2d 512, 514 (1st Cir.1989) (retrial not barred after all but ten jurors excused at defendant's request and defendant refused to consent to a trial with less than twelve jurors). The important consideration for Double Jeopardy purposes is that the defendant retain *primary* control over the course to be followed once an error has tainted the proceedings. *Dinitz*, 424 U.S. at 609, 96 S.Ct. 1075 (emphasis added).

The First Circuit has extended this rule to allow retrial in cases where mistrial was granted with the defendant's consent. *Larouche*, 866 F.2d at 514; *U.S. v. DiPietro*, 936 F.2d 6, 9 (1st Cir.1991) (stating that the defense under the Double Jeopardy Clause "may be waived or foreclosed by a defendant's voluntary actions or choices, including request for or effectual consent to a mistrial"). Consent to a mistrial may be "inferred from silence where a defendant had the opportunity to object and failed to do so." *DiPietro*, 936 F.2d at 9–10.

The case at bar clearly presents a rare situation where no party is responsible for the declaration of mistrial. However, from the moment the defect was discovered, Defendant gained primary control over the fate of the trial. Defendant's consent to the mistrial is evidenced by both his actions and lack of action. First, Defendant voluntarily refused to consent to an eleven-member panel. As such, he should have known that the Court would be left with no other option but to declare a mistrial. And second, Defendant failed to object to the Court's *sua sponte* declaration of mistrial. In remaining silent, Defendant implicitly consented to the mistrial.

Defendant argues, however, that he was not given an opportunity to object. This argument is contradicted by the record. For several minutes after the Court announced its decision to declare a mistrial, both defense counsel and government counsel remained in the courtroom. Defense counsel was present as the Court questioned the courtroom deputy as to the whereabouts of the missing juror. Next, defense counsel was present while the Court expressed its concern over government's motion to set a new trial date. Finally, defense counsel was present as the Court explained the reason for the mistrial to the jury before discharging them. At

no timefrom the moment the Court declared a mistrial to the moment it discharged the jury did defense counsel object to the mistrial.

WHEREFORE, the Court DENIES Defendant's motion contesting his retrial. Defendant's new trial date is hereby set for **October 8, 2001 at 9:00 am.**

**IT IS SO ORDERED.**